UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLARENCE STERNAMAN,

                Petitioner,                                 Hon. Richard Alan Enslen

v.                                                Case No. 4:02-CV-58

PAUL RENICO,

                Respondent.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Sternaman's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Sternaman's petition be **denied**.


## BACKGROUND

        In the summer of 1996, V.F. was 10 years of age. (Trial Transcript, February 24, 1998, 52). On several occasions during this particular summer, V.F. accompanied her mother, Lillian Fisher, to the motel room in which Petitioner lived. *Id.* at 54-57. During these visits, Petitioner paid Lillian Fisher to engage in sex acts with him. *Id.* at 56-64. Petitioner also paid V.F. to engage in sex acts with him. Lillian Fisher forced her daughter to participate in these sex acts. V.F. testified that she was forced to allow Petitioner to penetrate her vagina with his finger, his tongue, and his penis. V.F. further

testified that during one of these encounters her mother unsuccessfully attempted to penetrate her vagina with an artificial penis belonging to Petitioner.  *Id.*

Dr. Colette Gushurst subsequently examined V.F. at the request of Kalamazoo County Child Protective Services.  *Id.* at 22-30.  Dr. Gushurst is a pediatrician specifically trained to examine victims for evidence of sexual abuse.  *Id.* at 22-23.  Prior to examining V.F., Dr. Gushurst had performed more than 500 such examinations.  *Id.* at 23.  V.F. informed Dr. Gushurst that she had been sexually assaulted by her mother and Petitioner.  *Id.* at 35-36.

Dr. Gushurst testified that her examination revealed evidence consistent with V.F.'s allegations of vaginal penetration.  *Id.* at 36-41.  Specifically, the doctor testified that she observed "definite evidence" that V.F.'s hymen "had been traumatized and lacerated."  *Id.* at 37.  Dr. Gushurst testified that V.F. had suffered "repeated episodes" of vaginal penetration with items larger than a finger. *Id.* at 43-45.  With respect to Dr. Gushurst's examination of V.F., the following exchange occurred:

> Mr. Getting:    When you were making your physical examination of [V.F.] did anything about her demeanor or behavior during the course of this examination catch your attention?
>
> Dr. Gushurst:    Well, I always document their affect, how they're acting, how they're speaking to me.  And -- and, what I documented in [V.F.'s] case was that she -- her -- when she initially came into the room she seemed calm, not noticeably anxious, but also not willing to -- to talk too much.  I had to ask her a question before she -- she would talk to me.  So, she seemed not thrilled to be there, but -- but did answer and cooperate well.
>
> Um, during the examination she actually was pretty comfortable with the exam,

which is different than many children that age who are much more body conscious and -- and modest.  She was giggling when I was trying to feel for femoral pulses.  That's ar-- you know, areas in the groin, and that sort of thing.

And, she also did not seem bothered by my looking and pulling, the kinds of maneuvers that we use to get a better look at the hymen.

Um, normally, I don't use a speculum, the instrument that gynecologists use, or physicians use, on women to do the internal vaginal exam.  I normally don't use that in children this age.

Mr. Getting:   Why not?

Dr. Gushurst:   Because it's very traumatic to them.  Even in teens who may have already been -- or already been sexually active the first speculum is usually uncomfortable for them because it's a metal object.  But, I could tell by the widened area of her vaginal opening that it was gonna be no problem for me to use it, in -- in which case I did, because looking at the cervix is also important for me in looking for other sexually transmitted diseases, particularly venereal warts or human papiloma virus.

So, when I did insert the speculum she didn't flinch at all.  So, I asked her, you know, does this bother you? -- or, is this okay?  And -- and -- and, at -- at first she said, you know, it -- she didn't even feel it, but it -- she felt it but it -- then she clarified and said that she felt it but it wasn't painful.  And, that, to me, was distinctly unusual for a child this age.

*Id.* at 38-39.

Detective Scott Szekely testified that V.F. was later interviewed by a representative with the Family Resource Center. *Id.* at 125-28. Detective Szekely observed this interview on a closed-circuit television. *Id.* at 128. During this interview, V.F. reported that Petitioner had penetrated her vagina with his finger, his tongue, and his penis. *Id.* at 158-63. V.F. reported that Petitioner paid her and her mother for performing sex acts. *Id.* at 163. V.F. reported that Petitioner's artificial penis had both a black strap and a white strap and was located in a green suitcase. *Id.* at 132. She also reported that Plaintiff kept multiple tubes of K-Y Jelly in his room. *Id.*

Following V.F.'s interview, Detective Szekely obtained a search warrant for Petitioner's motel room. *Id.* at 125-30. Detective Szekely discovered a green suitcase in Petitioner's room. *Id.* at 132-33. Inside this suitcase, the detective found Petitioner's artificial penis along with a white strap and a black strap. *Id.* Detective Szekely also located two tubes of K-Y Jelly. *Id.* at 134.

Petitioner was subsequently arrested and interviewed by Officer Sharon Whaley. (Trial Transcript, February 25, 1998, 5-7). Petitioner initially denied having any sexual contact with V.F. *Id.* at 8-9. However, Petitioner later admitted to having in engaged in sexual contact with V.F. *Id.* at 10-11. Petitioner admitted that he penetrated V.F.'s vagina with his finger and his tongue. *Id.* at 11-12. Petitioner claimed that V.F. "was begging for it." *Id.* at 12.

Officer Whaley transcribed Petitioner's admissions into a statement for him to sign and acknowledge. *Id.* at 14-15. Petitioner signed this statement after making several corrections thereto. *Id.* at 15-16. This "corrected statement" (which was read into the trial record) reads as follows:

> She, in parenthesis, [V.F.], the little girl, tried sitting on my face to get me excited while her mother was giving me a blow job, and that didn't work.
>
> She was drunk. They had been drinking gin all day, both of them. And, they were still drinking when they came up to my room.

She just sat there, moved her body up and down where my tongue would hit that glit (sic).  My tongue never went inside of her; I know that.  The most my tongue would have done was touched her clit.  She said, Now, how would you like to stick your dick in this hot, sweet pussy?  And, I said, No, thank you.  As you can see, it won't get hard.  I rub my hand over her pussy when she said, Touch that.  Not to my knowledge, my finger never went inside of her, just touched her clit.

The mother handcuffed me to the bed, and that's when the daughter sat on my face, and couldn't do nothin' about it.  My pants were still on.  The mother took my dick out.  [V.F.] was coming out of the bathroom, pulling up her pants, and said, Pat this.  Don't it look good?  That was mostly her mother's idea.  Her mother wanted to see me do something with her.  I patted her on the butt.  My fingers were across her butt, and I told her, That don't excite me at all.

Her mother did me with a dildo; that means she penetrated me with a dildo.  The mother wanted the daughter to put it on; she did.  My pants were pulled down and the daughter penetrated me, but she didn't know how to do it.  Her mother wanted her to do it so she could lick her butt.  Her mother told me every time that she just looks at her daughter she gets horny.

*Id.* at 16-19.

Petitioner testified at trial.  He admitted that V.F. and Lillian Fisher visited him at his motel room several times during the summer of 1996, but he denied ever engaging in sexual activity with V.F.  *Id.* at 48-65.  Petitioner acknowledged that he signed the above statement, but asserted that he was unable to read the statement and, furthermore, that he "signed it under duress."  *Id.* at 66-70, 73-76, 81-82.

Petitioner admitted that he kept an artificial penis and tubes of K-Y Jelly in his motel room, but asserted that the artificial penis did not belong to him and that the K-Y Jelly was not for use with the artificial penis.  *Id.* at 73, 78.  Petitioner also testified that Lillian Fisher offered to have sex with him for money because she needed money for food.  *Id.* at 49-51.  Petitioner asserted that he refused

Lillian Fisher's offer and instead took Lillian and V.F. to the grocery store and purchased groceries for them. *Id.* at 51-52.

Petitioner was subsequently charged with three counts of first degree criminal sexual conduct and one count of attempted first degree criminal sexual conduct. *Id.* at 147-53. Following a jury trial, Petitioner was found guilty on all four counts. *Id.* at 159. As an habitual offender, Plaintiff was sentenced to 15-30 years for attempted first degree sexual conduct and life in prison (and two terms of 30-60 years) on the three remaining convictions. (Sentencing Transcript, March 23, 1998, 12). Petitioner appealed his conviction to the Michigan Court of Appeals, asserting the following claims:

I.     The trial court committed reversible error in permitting the prosecutor's expert in child sexual abuse, Dr. Colette Gushurst, to testify to the hearsay statements of the victim, identifying Defendant as the perpetrator, where such identification was not necessary for diagnosis or treatment and whose testimony vouched for and buttressed the child-victim's credibility.

II.     The trial court committed reversible error when it permitted the prosecutor to elicit the hearsay statement of complainant [V.F.], to impermissibly bolster and vouch for the truthfulness of her testimony contrary to MRE 801(d)(2).

III.     Defendant was denied his right to a fair trial by prosecutorial misconduct where he elicited the testimony of Detective Whaley regarding the editorialized version of an "informal" statement by Defendant taken prior to a selective written or "formal" statement.

IV.     Defendant was denied his right to a fair trial under the Michigan and Federal constitutions by the intentional prosecutorial misconduct in his improper and highly prejudicial argument to the jury, where he repeatedly vouched for his witnesses, expressed his personal belief in Defendant's guilt, appealed to the sympathy of the jury and denigrated Defendant's presumption of innocence.

      V.     Defendant's sentencing proceeding was tainted by reversible error where:

          A.    The trial court failed to properly consider the established sentencing factors and standards and failed to articulate valid reasons for imposing a life in prison, two 30-60 year, and a 15-30 year sentences, upon Defendant;

          B.    The trial court violated the concept of proportionality in imposing a life in prison, two 30-60 year, and a 15-30 year sentences, upon Defendant.

      VI.    The cumulative effect of errors alleged in the legal argument herein denied Defendant a fair trial.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Sternaman*, No. 211295, Opinion (Mich. Ct. App., Dec. 3, 1999). Asserting the same issues, Petitioner subsequently submitted in the Michigan Supreme Court a delayed application for leave to appeal. The court denied Petitioner's request. *People v. Sternaman*, No. 119453, Order (Mich., Nov. 30, 2001).

Petitioner also filed in the trial court a motion for relief from judgment in which he asserted the following claims:

      I.     Defendant was denied his right to a fair trial under the Michigan and Federal Constitutions by the Court allowing a biased juror: namely number 27, Terri Horoff, to serve on the jury who was biased, therefore, denying the defendant a fair trial by not allowing him to have an impartial jury.

      II.    Ineffective assistance of counsel of Court of Appeals attorney.

The trial court denied Petitioner's motion. *People v. Sternaman*, No. C 97-1264-FC, Opinion (Kalamazoo County Cir. Ct., Dec. 11, 2000). Asserting only his biased juror claim, Petitioner appealed this decision to the Michigan Court of Appeals which denied Petitioner's appeal on the grounds that Petitioner "has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sternaman*, No. 232410, Order (Mich. Ct. App., May 22, 2001).

Again, raising only his biased juror claim, Petitioner unsuccessfully appealed this decision to the Michigan Supreme Court which concluded that Petitioner "has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sternaman*, No. 119453, Order (Mich., Nov. 30, 2001). On April 10, 2002, Sternaman filed the present petition for writ of habeas corpus in which he asserts the following claims:

    I.      Conviction obtained by action of a petit jury which was unconstitutionally selected and impaneled.

    II.     Denial of effective assistance of appellate counsel.

## STANDARD OF REVIEW

Sternaman's petition, filed April 10, 2002, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

    (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

        (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

        (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

        Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

        Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

        In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.  Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority.  The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law.  *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct.  *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner can rebut this presumption only by clear and convincing evidence.  *Id.*

## ANALYSIS

**I.        Biased Juror Claim**

Petitioner asserts that his conviction must be overturned because his Sixth Amendment right to an impartial jury was violated when the trial court refused to dismiss for cause an allegedly

biased juror.  Petitioner has procedurally defaulted this claim, however, precluding its consideration by this Court.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim.  *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  Furthermore, to find that a petitioner has procedurally defaulted a particular claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default."  *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish the existence of cause and prejudice for his procedural default, or if a fundamental miscarriage of justice would result from the failure to grant the relief he seeks.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Coleman*, 501 U.S. at 750-51; *Silverberg v. Evitts*, 993 F.2d 124, 127 (6th Cir. 1993); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To establish that a miscarriage of justice would result from the Court's failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  The burden to make this showing rests with Petitioner, *see Floyd v. Alexander*, 148 F.3d 615, 618 (6th Cir. 1998); *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997), who must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error probably resulted in the conviction of an innocent person.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 326.  This requires Petitioner to overcome a hurdle higher than that to establish prejudice. *Id.*

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal.  M.C.R. 6.508(D)(2)-(3).  With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom.  M.C.R. 6.508(D)(3).  In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand."  M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a

sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues against which it is applied. *Simpson*, 238 F.3d at 407 (6th Cir. 2000).

Petitioner did not raise this particular claim in his direct appeal, but instead raised it for the first time in his post-conviction motion for relief. As previously noted, Petitioner's post-conviction motion for relief from judgment was denied by the Michigan Court of Appeals and the Michigan Supreme Court on the ground that Petitioner failed to comply with Michigan Court Rule 6.508(D). Petitioner has, therefore, procedurally defaulted this particular claim.

The Court recognizes that the failure by appellate counsel to properly present this claim on direct appeal can constitute cause for Petitioner's procedural default. However, for such failure to constitute cause, Petitioner must establish that appellate counsel's failure was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see also, Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) ("[a]ttorney error does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient"). In other words, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards*, 529 U.S. at 451.

As detailed below, Petitioner cannot establish that appellate counsel's failure to present this particular claim in the state courts constitutes ineffective assistance. Therefore, counsel's failure to present this particular claim in the state courts cannot constitute cause to excuse Petitioner's procedural default. Furthermore, as also discussed below, this particular claim is without merit. Thus,

Petitioner cannot establish that he suffered prejudice as a result of his failure to present this claim in the state courts.  Finally, there exists absolutely no evidence that a fundamental miscarriage of justice will result from the Court's failure to address this particular claim.  Accordingly, the Court is precluded from considering this claim.

**II.**              **Ineffective Assistance of Appellate Counsel Claim**

Petitioner claims that his Sixth Amendment rights were violated by the allegedly ineffective assistance rendered by his appellate counsel.  Specifically, Petitioner claims that appellate counsel rendered ineffective assistance by failing to present to the state courts the claim that the trial court improperly failed to remove Juror Haroff for cause.

Before seeking habeas relief in the federal courts, Petitioner must first exhaust in the state courts those claims upon which habeas relief is sought.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1).  Exhaustion requires that Petitioner provide the "highest court in the state" a "full and fair opportunity" to pass upon his claim that his federal rights have been violated.  *Rust v. Zent* 17 F.3d 155, 160 (6th Cir. 1994); *see also*, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (petitioners must "fairly present" their federal habeas claims to the state courts).

As noted above, Petitioner filed in the trial court a post-conviction motion for relief from judgment in which he asserted two claims: (1) his Sixth Amendment rights were violated by the presence of a biased juror, and (2) his appellate counsel rendered ineffective assistance.  The trial court denied Petitioner's motion.  While Petitioner appealed this determination to both the Michigan Court of Appeals and the Michigan Supreme Court, Petitioner failed to present to either of these subsequent courts his ineffective assistance of appellate counsel claim.  By failing to present this particular claim to the

Michigan Supreme Court, Petitioner has failed to properly exhaust this claim.  *See* 28 U.S.C. §

2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Rust*, 17 F.3d at 160.  Moreover,

Petitioner has since forfeited the ability to pursue this claim in the state courts.  While he could assert

this claim in a motion for relief from judgment, Michigan court rules indicate that a defendant can file

only one such motion, *see* M.C.R. 6.502(G)(1), and Petitioner has already filed his.[1]

Generally, federal courts are required to dismiss habeas petitions which contain

unexhausted claims.  *See Rose v. Lundy*, 455 U.S. 509 (1982).  However, if the state no longer provides

a "remedy for the habeas petitioner to pursue," the issue is not lack of exhaustion, but "rather, it is a

problem of determining whether cause and prejudice exist to excuse the failure to present the claim in

the state courts."  *Rust*, 17 F.3d at 160.  When a petitioner has failed to properly exhaust a particular

claim, and there exists no available remedy by which such failure can be corrected, the Court must

determine whether there exists cause and prejudice to excuse his failure to present the claim in state

court.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

Petitioner has presented neither evidence nor allegation that there exists good cause for

his failure to assert this claim in the state courts.  Furthermore, even assuming that there exists good

cause for his failure to present this claim in the state courts, Petitioner cannot demonstrate prejudice, as

this particular claim is without merit.

----

[1]   While it is not entirely clear, Michigan Court Rule 6.508(D)(3) appears to indicate that Petitioner *may*, in fact, be
entitled to bring a second motion for relief from judgment upon a showing of cause and prejudice.  Assuming this interpretation
is accurate, the determination whether Petitioner can satisfy the requirements of a particular Michigan court rule seems to be a
matter for the courts of the State of Michigan to decide.  *See, e.g., Lukity v. Elo*, 2000 WL 1769507 at *4 (E.D.Mich., Oct. 10,
2000) ("[g]iven the inability to conclude that there is an absence of available state corrective procedures, the principles of federal-
state comity dictated by the exhaustion doctrine compel this Court to defer to the State of Michigan to interpret its own
postconviction statute").  Accordingly, the Court would be inclined to dismiss Sternaman's petition for failure to exhaust all
available state remedies.  However, this is an approach with which the Sixth Circuit disagrees.  *See Paffhousen v. Grayson*, 2000
WL 1888659 (6th Cir., Dec. 19, 2000) (finding that petitioner was unable to file a second motion for relief from judgment pursuant
to M.C.R. 6.502(G)); *Bostic v. Abramajtys*, 1999 WL 96738 (6th Cir., Feb. 3, 1999) (same).

The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees to every criminal defendant that he will be tried by "a panel of impartial, 'indifferent' jurors." *Williams v. Bagley*, 380 F.3d 932, 943-44 (6th Cir. 2004) (citations omitted). The presence of "even a single biased juror" deprives a defendant of his Sixth Amendment right to a fair trial. *Id.* at 944 (citation omitted).

When questions of juror impartiality arise, the relevant question is whether the juror stated that he "could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004) (citation omitted). The constitutional requirement of impartiality does not mandate that jurors be "totally ignorant of the facts and issues involved." *Id.* (citation omitted). Instead, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* (citation omitted).

Juror Haroff indicated during voir dire that she knew Dr. Gushurst. (Trial Transcript, February 18, 1998, 79). Haroff indicated that "about 6 years ago" she was employed as the "Program Coordinator" of the residency program in which Dr. Gushurst was then working. *Id.* at 79-80. However, when questioned by the trial judge, Juror Haroff stated that there was nothing about her prior experience with Dr. Gushurst that would make it difficult for her to carry out duties as a juror. *Id.* at 80. Juror Haroff further stated that she did not have any preconceived notions that would prevent her from following the court's instructions, including the concepts of reasonable doubt and the presumption of innocence. *Id.* at 80-81.

Petitioner's trial counsel challenged Juror Haroff for cause on the ground that because of her prior relationship with Dr. Gushurst, Haroff "might not be able to treat [Dr. Gushurst's] testimony

-16-

the same as she might other witnesses." *Id.* at 146-47.  The trial judge denied this challenge, concluding that Haroff did not express "an opinion that would. . .prevent her from sitting." *Id.* at 147-48. Petitioner's counsel declined to use a peremptory challenge to dismiss Juror Haroff.

   As the Sixth Circuit has recognized, "[i]t is beyond question that mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint; such a standard would be certainly unsalutary, and likewise impossible to achieve." *Miller v. Francis*, 269 F.3d 609, 616 (citation omitted).  As noted above, Juror Haroff stated that she was able to discharge her duties as a juror in accordance with the trial court's instructions.

   When evaluating this particular claim it must be remembered that the "trial court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness" and "may be overturned only for manifest error." *Bagley*, 380 F.3d at 944 (citations omitted).  Petitioner has failed to present or identify any evidence from which a reasonable person could conclude that the decision not to dismiss Juror Haroff for cause was manifest error.

   In sum, appellate counsel was not ineffective for failing to assert this claim on appeal, as this claim is without merit.  Thus, Petitioner cannot establish cause or prejudice for his failure to present this claim to the state courts.  Furthermore, Petitioner cannot establish that failure to address this claim will result in a fundamental miscarriage of justice.  Accordingly, this claim presents no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the Court concludes that Petitioner is not being confined in violation of the United States Constitution. Accordingly, the Court recommends that his petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 5, 2005

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge